UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LENNY COPPOLA and CHERYL ACCARDI, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>            v.<br><br>AMROCK, LLC,<br><br>    Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*    Civil Action No. 1:23-cv-11639-IT<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

April 12, 2024

TALWANI, D.J.

Pending before the court is Defendant Amrock, LLC's ("Amrock") Motion to Transfer Plaintiffs' Class and Collective Action Complaint [Doc. No. 25] seeking transfer of this action under 28 U.S.C. § 1404 to the Eastern District of Michigan or, alternatively, dismissal of the claims of any non-Massachusetts putative collective members under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, the Motion [Doc. No. 25] is DENIED.

**I.    Background Relevant to this Motion**

Plaintiffs Lenny Coppola and Cheryl Accardi (the "Named Plaintiffs") initiated this action on July 21, 2023. Complaint [Doc. No. 1]. They allege that their former employer, Amrock, violated Section 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq., as well as Massachusetts and New Hampshire labor laws, by failing to pay Plaintiffs and other employees for all hours worked and for improperly denying them overtime compensation. See Am. Complaint ¶¶ 80-118 [Doc. No. 15]. They bring their FLSA claims as a

nationwide collective action under 29 U.S.C.216(b),[1] and their state law claims as class actions under Federal Rule of Civil Procedure 23 on behalf of a putative Massachusetts-wide class[2] and a putative New Hampshire-wide class.[3]

Amrock is a national provider of title insurance, property valuations, and settlement services headquartered in Detroit, Michigan. Decl. of Nicole Beattie ("Beattie Decl.") ¶ 7 [Doc. No. 25-1]. Plaintiff Coppola was employed by Amrock as a Residential Staff Appraiser ("Appraiser") from August 2013 to February 2023. Amended Complaint ¶ 13 [Doc. No. 15]. Coppola currently, and at all relevant times, resides in Mattapoisett, Massachusetts. Id. Plaintiff Accardi was employed by Amrock as an Appraiser from July 2012 to August 2020. During her employment with Amrock, Accardi resided in Massachusetts and New Hampshire. Id.

Amrock's business activities—like payroll administration, decisions regarding compensation, and maintenance of corporate and payroll records—are conducted out of its

---

[1] Plaintiffs seek to bring their FLSA claims on behalf of "[a]ll persons who are, or have been, employed by Defendant as an Appraiser in the United States (excluding New York State[]) within the period of the past three years prior to this action's filing date through the date of the final disposition of this action [(the "Collective Period")], who worked over 40 hours in at least one workweek during the Collective Period and were subject to one or more of the common unlawful practices set forth in paragraph 4 (i)-(iv), and not paid overtime premiums for all hours worked in excess of 40. Amended Complaint ("Am. Complaint") ¶ 68 [Doc. No. 15]. Under the FLSA, any such person would need to opt-in to participate in the litigation. 29 U.S.C. § 216.

[2] Plaintiffs seek to represent a class of "[a]ll persons who are or have been employed by Defendant as an Appraiser in Massachusetts within the period of the past three years prior to this action's filing date through the date of the final disposition of this action, who worked at least one workweek during the Class Period and who were subject to one or more of the common unlawful practices set forth in paragraph 4 (i)-(iv) and not paid in violation of [M.G.L. ch. 148, 151, et seq.]. Id. ¶ 69.

[3] Plaintiffs seek to represent a class of "[a]ll persons who are or have been employed by Defendant as an Appraiser in New Hampshire within the period of the past three years prior to this action's filing date through the date of the final disposition of this action, who worked at least one workweek during the Class Period and who were subject to one or more of the common unlawful practices set forth in paragraph 4 (i)-(iv) and not paid in violation of the [New Hampshire Minimum Wage Law]." Id.

headquarters in Detroit, Michigan. Beattie Decl. ¶¶ 9-12 [Doc. No. 25-1]. At least five corporate employees who helped develop Amrock's compensation plans and policies reside in Michigan. Id. ¶ 13. Amrock has never maintained a physical office in Massachusetts or New Hampshire. Id. ¶ 18.

Amrock's Appraisers were located across the United States: of the 248 people Amrock employed as Appraisers during the Collective Period,[4] approximately 7 of those people worked in Massachusetts or New Hampshire, and approximately 25 worked in Michigan. Id. ¶ 21. Of the 33 individuals who are participating in the litigation thus far as Named Plaintiffs or Opt-ins, see Batches of Opt-ins for Party Plaintiffs [Docs. No. 4, 7, 11, 12, 21, 22, 47, 51, 63, 65, 67], 4 reside in Massachusetts or New Hampshire, 8 in Michigan, 4 in Florida, 2 each in California, Connecticut, and Maryland, 1 each in Arizona, Illinois, Indiana, and Wisconsin, and 7 whose residences are not included in their filings with the court. Each Appraiser was assigned a particular geographic region near their residence for which they were responsible. Decl. of Lenny Coppola ("Coppola Decl.") ¶¶ 4-5 [Doc. No. 50]. All timekeeping and payroll statements were managed via electronic means. Id. ¶¶ 6-7. At all times relevant to the Amended Complaint, Amrock distributed its policies to employees electronically, and most meetings were conducted remotely. Id. ¶¶ 8-11.

Some former Appraisers for Amrock, including the Named Plaintiffs, entered into Severance Agreements with Amrock, which included a severance payment provision, post-employment obligations, and a release of claims except those "which, as a matter of law, cannot

---

[4] This number excludes any appraisers that Amrock employed in the state of New York between July 21, 2020 - September 28, 2023. Beattie Decl. 4 n.1 [Doc. No. 25-1].

be released or waived by private agreement." Beattie Decl. ¶ 26, Ex. A at ¶¶ 4, 6, 9(d) [Doc. No. 25-1]. The Severance Agreement also included a choice of venue provision stating:

> You acknowledge that the state and federal courts encompassing Wayne County, Michigan shall have exclusive jurisdiction over any case or controversy arising or relating to this Agreement, and that all litigation arising out of or relating to this Agreement shall commence in the United States District Court for the Eastern District of Michigan or Wayne County (Michigan)[.]

Id., Ex. A at ¶¶ 9(d), 18.

Other former Appraisers, but not including the Named Plaintiffs, have signed a Career Transition Agreement with Amrock, which includes an arbitration provision. See Beattie Decl. Exs. E-G, ¶ 7 [Doc. No. 25-1].

## II. Discussion

### A. Transfer of Venue

Amrock requests first that this court transfer the action to the District Court for the Eastern District of Michigan, claiming that the Named Plaintiffs are contractually bound to litigate their claims in that district and that such transfer would best serve the convenience of the parties and witnesses and the interest of justice.

#### 1. The Severance Agreement and its Forum-Selection Clause

The court begins with Amrock's claim that the Named Plaintiffs have agreed that another forum is the appropriate venue for this suit. Defendant's Memorandum of Law in Support of Motion to Transfer Plaintiffs' Class and Collective Action Complaint ("Def.'s Mem. ISO Transfer") 4-6, 12-13 [Doc. No. 26]. While a plaintiff's choice of forum is ordinarily entitled to some deference, the calculus fundamentally changes in the presence of a valid forum-selection clause. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 63 (2013) ("[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its

4

'venue privilege' before a dispute arises."). Thus, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 59-60 (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Plaintiffs respond that their claims are outside of the scope of that clause. Pls.' Opp. Transfer 7-9 [Doc. No. 49]. "[I]t is the language of the forum selection clause itself that determines which claims fall within its scope." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009). Here, the relevant forum selection clause provides that "all litigation arising out of or relating to this Agreement shall commence in the United States District Court for the Eastern District of Michigan or Wayne County (Michigan)[.]" By its own language, the forum-selection clause in the Severance Agreement applies to claims arising from, or relating to, that Agreement.

Plaintiffs here seek to enforce their rights under state and federal labor laws to receive overtime premiums they were allegedly due from their employer, Amrock. Their claims thus cannot be viewed as "arising out of or relating to" an agreement that specifically governs post-employment severance. See Lucke v. Mun. Accounts & Consulting, L.P., 2011 WL 13324289, at *2 (W.D. Tex. Mar. 23, 2011) ("Simply because the [] Agreement and Plaintiff[s'] FLSA claim both concern the conditions of Plaintiff[s'] employment in a general sense does not mean [their] FLSA claim 'relates to' the Agreement within the context of the forum selection clause."). Plaintiffs' claims for unpaid overtime thus neither arise from nor relate to their Severance Agreements with Amrock and litigation was thus properly commenced in this forum.

Notably, while the Severance Agreements purport to release and waive any employee claims against Amrock for compensation, see Beattie Decl. ¶ 26, Ex. A at ¶ 9(a) [Doc. No. 25-1],

that release is not implicated here where the agreement carves out "all claims and rights … which, as a matter of law, cannot be released or waived by private agreement," id. at ¶ 9(d). The Supreme Court held in Barrentine that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981) (internal citation omitted). The First Circuit has also held that "[r]ights conferred by Congress are conceptually distinct from those created by private agreement, and there is no authority for the proposition that rights under the FLSA merge into contractual ones whenever the two overlap." O'Brien v. Town of Agawam, 350 F.3d 279, 284, 285 (1st Cir. 2003); see also Fefel v. Silver Tree Residential, LLC, 2018 WL 6267944, at *3 (S.D. Fla. Nov. 30, 2018) (finding plaintiffs' FLSA claims were nonwaivable and distinct from the subject severance agreement and denying defendants' motion to transfer venue).

Accordingly, the forum-selection clauses in the Severance Agreements are not relevant here.

### 2. The 1404(a) Factors

When there is no valid forum-selection clause, courts weigh an array of private and public interest factors to determine if transfer would serve the convenience of the parties and the interest of justice. See Atl. Marine Const. Co., 571 U.S. at 62 (citing 28 U.S.C. § 1404(a)).

#### a. Jurisdiction

The preliminary question in a 1404(a) analysis is whether the lawsuit could have been brought in the proposed transferee district. See Hoffman v. Blaski, 363 U.S. 335, 342–44 (1960). A collective action under the FLSA can be brought in the district where the employer is headquartered and incorporated. 28 U.S.C. § 1391(c). Here, Amrock is a Michigan LLC with its

corporate headquarters in Detroit (which is within the Eastern District of Michigan). Def.'s Mem. ISO Transfer 8 [Doc. No. 26]. Amrock further argues that the employment practices challenged by Plaintiffs were developed at its headquarters in Detroit. Id. Thus, Amrock has met its burden to show that the Eastern District of Michigan is a venue in which this action could have been brought.

### b. Presumption Towards Plaintiffs' Choice of Forum

Ordinarily, there is "a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); see also Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) ("The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum").

Amrock argues that the rule is different when plaintiffs seek to represent a nationwide class and that Named Plaintiffs' choice of forum should thus be given less weight in this analysis. See Def.'s Mem. ISO Transfer 10 [Doc. No. 26]; Def.'s Reply ISO Transfer 2-3 [Doc. No. 62]. That argument may have appeal in a class action filed under Fed. R. Civ. P. 23. See Wiley v. Gerber Prods., 667 F.Supp.2d 171, 174 (D. Mass. 2009) (finding the logic of the argument against a strong presumption favoring the plaintiff's forum "convincing"). The court disagrees, however, that the same logic applies to collective actions filed pursuant to the FLSA.

To the contrary, courts have held that a plaintiff's choice of forum in an FLSA action is entitled to *more* deference than the choice of forum in Rule 23 class actions. See, e.g., Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d 493, 500 (D. Mass. 2018). In Montoya, the court found that the opt-in mechanism of FLSA collectives distinguishes it from class actions filed under Fed. R. Civ. Pro. 23, reasoning that "FLSA class members who 'opt-in' to this litigation are, at

least implicitly, signaling that they prefer to join this case in Massachusetts rather than file a claim closer to home." Id. (citing Johnson v. VCG Holding Corp., 767 F. Supp. 2d 208, 215, 216 (D. Me. 2011) (finding that "Congress intended to give plaintiffs considerable control over the bringing of an FLSA action").

Accordingly, Amrock's contention that Named Plaintiffs' choice of forum should be given less deference is not persuasive. Named and Opt-in Plaintiffs' choice to litigate this FLSA action in the forum-state of Massachusetts is granted at least some deference. See Johnson, 767 F. Supp. 2d at 216.

### c. Convenience of the Parties and Witnesses

#### (1) Plaintiffs' Interest in Litigating in Massachusetts

Named Plaintiff Coppola continues to reside in Massachusetts while Accardi now resides in the neighboring state of New Hampshire. Thus, Named Plaintiffs would find it easier to litigate in this court than in the Eastern District of Michigan.

The Opt-in Plaintiffs in this collective action are from eleven different states, including Massachusetts, New Hampshire, New Jersey, Connecticut, Florida, Illinois, Indiana, California, Arizona, Wisconsin, and Michigan. Amrock argues that, given its wide geographic distribution, the putative class as a whole might find litigation in Eastern District of Michigan to be more convenient than in the District of Massachusetts. Def.'s Reply ISO Transfer 4 [Doc. No. 62].

Defendant ignores, however, that Opt-in Plaintiffs had a choice here—that is, a choice *not* to opt-in to the collective action Named Plaintiffs filed in Massachusetts. The opt-in mechanism that is unique to FLSA actions demonstrates that putative class members opting into this litigation would prefer to join this case in Massachusetts rather than file a claim somewhere closer to home. See Montoya, 285 F. Supp. 3d at 500. Thus, that Named Plaintiffs decided to file

their case in Massachusetts, and each Opt-in Plaintiff has signed a consent form opting to join in their collective action filed in this court, places this factor in favor of Named Plaintiffs' choice of forum.

### (2) Defendant's Interest in Transfer

Defendant argues that its employment policies at issue were all developed and implemented at its headquarters in Michigan. Def.'s Mem. ISO Transfer 9 [Doc. No. 26]. Moreover, Defendant claims, "all the witnesses who possess relevant knowledge about those policies and practices are located in Detroit, as are all relevant documents." Id.

Amrock's documents presumably could be produced in an electronic format for purposes of this litigation, and this court, like others, finds that the location of physical documents is not a potent factor given the prevalence of electronic discovery and litigation. See Johnson, 767 F.Supp.2d at 216 (finding this factor is as a holdover from a time when businesses kept important records in paper and the burden of transporting was far greater than it is today); see also First State Ins. Co. v. XTRA Corp., 583 F. Supp. 3d 313, 319 (D. Mass. 2022) ("[T]he development of digital technology has caused the importance of the location of documentary evidence to wane"). The documents' location thus does not weigh in favor of either party.

Amrock also argues that if this case goes to trial, it will likely call as witnesses some of its Michigan-based team leaders or one of the Opt-in Plaintiffs residing in Michigan. Def.'s Mem. ISO Transfer 9 [Doc. No. 26]. There is no doubt that transfer of this case to the Eastern District of Michigan would be more convenient for Amrock's Michigan-based witnesses, and "the convenience of expected witnesses remains probably the most important factor bearing upon a motion to transfer." First State Ins. Co., 583 F. Supp. 3d at 319 (internal citation omitted).

9

Plaintiffs counter that, even prior to 2020, Amrock employees held remote meetings with coworkers and Amrock leadership on a regular basis. Coppola Decl. ¶ 9 [Doc. No. 50]. Since 2020, almost all Amrock meetings have been held virtually, id. ¶ 10, and Amrock has distributed various employment-related policies to its employees via electronic means. Id. ¶ 11. Furthermore, the parties have already conducted a remote video deposition of Amrock's CEO, Nicole Beattie, in another FLSA action Amrock's employees brought in New York. Pls.' Opp. Transfer 16 n.4 [Doc. No. 49]. Plaintiffs also point out that while the District of Massachusetts may not be ideal for Amrock's witnesses, the Eastern District of Michigan would be just as, if not more, inconvenient for the Plaintiffs and any of their witnesses based outside of Michigan. Id. at 18.

The court notes that for discovery, the parties may be able to reach an agreement to conduct the depositions remotely or may instead choose to take depositions where the witnesses are located. While trial may require witnesses to travel, the "balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it." Sigros v. Walt Disney World Co., 129 F.Supp.2d 56, 71 (D. Mass. 2001). Where, as here, "there can be little doubt that a large corporation like [Defendant] is in a better position to absorb the cost of an inconvenient forum" than the non-exempt Plaintiffs here "even if the number of [transferee district]-based witnesses slightly favors transfer, this consideration is neutralized by the fact that [defendant] is better able to absorb the cost of such inconvenience." Montoya, 285 F. Supp. 3d at 501. Thus, this factor weighs in neither party's favor.

Named Plaintiffs chose to file this collective action with the District of Massachusetts and non-resident Opt-Ins have all filed voluntary consents to participate in their collective action

with this court. On balance, the convenience of the parties weighs in favor of keeping this case in the Plaintiffs' choice of forum—the District of Massachusetts.

### d. Public Interest Factors

The public-interest factors the court may weigh on a motion to transfer venue include: the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law. See Piper Aircraft Co., 454 U.S. at 241 n.6. (internal citation omitted). Here, neither side has pointed to any administrative difficulties or argued that court congestion is relevant.

Named Plaintiff Coppola lives in Massachusetts and Named Plaintiff Accardi lives in the nearby state of New Hampshire. Both Named Plaintiffs also lived in Massachusetts during at least some of the time they worked for Amrock, against whom they bring allegations for wage-related violations of the FLSA and state law. Therefore, Massachusetts has an interest in the resolution of the claims, which further disfavors transfer.

On "the interest in having the trial of a diversity case in a forum that is at home with the law[,]" Defendant argues that "the enforceability of the Plaintiffs' contracts with Amrock are governed by Michigan state law." Def.'s Mem. ISO Transfer 12 [Doc. No. 26]; Piper Aircraft Co., 454 U.S. at 241 n.6. The court recognizes that the court handling this case may well be called upon to determine the enforceability of the Career Transition Agreement, see Pls.' Mot. for Invalidation of Improper Class Communications [Doc. No. 30] (seeking to invalidate agreements), under Michigan law, see Def.'s Opposition to Pls.' Mot. for Invalidation 13 n.11 [Doc. No. 53] (noting the Career Transition Agreement's choice of law provision requires the application of Michigan law), and the Eastern District of Michigan has greater familiarity with

Michigan law. But balancing out the Michigan court's familiarity with Michigan contract law, this court is more likely to be more familiar with the Massachusetts and New Hampshire wage laws at issue.

Finally, Defendant makes no argument, and this court knows of none, as to why the Eastern District of Michigan would be better equipped than the District of Massachusetts to apply the FLSA, or the Federal Arbitration Act, in the event that Defendant seeks to enforce the arbitration provision as to opt-in plaintiffs who have signed the Career Transition Agreement, see Def.'s Mem. ISO Transfer 5-6 [Doc. No. 26] (asserting that certain putative collective members are bound by the arbitration agreements in their Career Transition Agreements). Therefore, there is no indication that Amrock will lose protection over any of its substantive rights were this court to hear the collective action here. As such, this factor is neutral with regard to transfer.

The court finds that on balance, the relevant public interest factors are largely neutral. In sum, this court is unpersuaded that transfer is warranted under 1404(a).

### B. Personal Jurisdiction

Amrock asks in the alternative that the court dismiss claims "asserted on behalf of non-Massachusetts collective members for lack of personal jurisdiction." Def.'s Mem. ISO Transfer 14 [Doc. No. 26]. Defendant argues that this court lacks general jurisdiction over Amrock and cannot assert specific jurisdiction as to the FLSA claims of non-resident collective members. Motion to Transfer 1 [Doc. No. 25]. Plaintiffs do not dispute that Massachusetts lacks general jurisdiction over Amrock. Instead, Plaintiffs contend the District of Massachusetts may assert specific jurisdiction over Amrock as to the claims of not only the Named Plaintiffs, but also the Opt-In Plaintiffs. Pls.' Opp. Transfer 20 [Doc. No. 49]

"'Specific personal jurisdiction . . . may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" Warren Env't, Inc. v. Source One Env't, Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)). Amrock does not challenge specific jurisdiction as to the Named Plaintiffs' claims but asserts that the court lacks specific jurisdiction as to the claims of non-Massachusetts putative collective members. Amrock argues that because the conduct giving rise to the claims of non-Massachusetts Plaintiffs did not arise directly from Amrock's contacts with Massachusetts, under Bristol-Myers Squibb Co. v. Superior Ct. of California, 582 U.S. 255, 258-65 (2017), this court cannot exercise specific jurisdiction over the out-of-state Opt-In Plaintiffs. Def.'s Mem. ISO Transfer 17 [Doc. No. 26].

In Bristol-Myers, plaintiffs sought to bring a state-law mass tort action on behalf of over 600 plaintiffs, a majority of whom were out-of-state plaintiffs with no connection to the forum state. 582 U.S. at 259. The Supreme Court concluded that, under the Fourteenth Amendment, the state court lacked specific jurisdiction to address non-residents' individual claims with no connection to the forum state. But Bristol-Myers did not concern and does not govern a collective action on behalf of a nationwide collective class, as Plaintiffs seek here, and specifically reserved the separate question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court. See Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 88, 92 (1st Cir. 2022).[5]

In Waters, the First Circuit explained that, "the 'constitutional limits' of a federal court's jurisdiction over federal-law claims 'are drawn in the first instance with reference to the [D]ue

---

[5] Amrock acknowledges that this court is bound by Waters. Def.'s Mem. ISO Transfer 14 n.8 [Doc. No. 26] (citing id. at 84).

[P]rocess [C]lause of the [F]ifth[A]mendment," id. at 92 (citing Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991)), and that "[t]he Fifth Amendment does not bar an out-of-state plaintiff from suing to enforce their rights under a federal statute in federal court if the defendant maintained the 'requisite "minimum contacts" with the United States.'" Id. (citing United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) (footnote omitted)). The First Circuit then considered and rejected the defendant's argument that Federal Rule of Civil Procedure 4(k) "incorporates the Fourteenth Amendment's limits on the jurisdiction of federal courts wherever a federal statute does not provide for nationwide service of process[,]" concluding instead that "the Fifth Amendment's constitutional limitations limit the authority of the court after service has been effectuated at least in federal-law actions." Id. at 92, 96.

As with the defendant in Waters, Amrock raises no claim that service of process was improper here or that this court lacks personal jurisdiction over it based on Named Plaintiffs' claims. That similarly situated individuals have opted-in (or may, in the future, opt-in) does not deprive the court of jurisdiction over this FLSA action any more than permitting additional parties with claims arising out of the "same transaction [or] occurrence" and presenting common "question[s] of law or fact" to join a pre-existing lawsuit would raise personal jurisdiction concerns. See id. at 96 (citing Fed. R. Civ. P. 20(a)(1)(A), (B)). Accordingly, following Waters, the court finds no grounds to dismiss claims asserted on behalf of non-Massachusetts putative collective members for lack of personal jurisdiction. See Waters, 23 F.4th at 99-100.

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Transfer Plaintiffs' Class and Collective Action Complaint [Doc. No. 25] to the Eastern District of Michigan is DENIED.

IT IS SO ORDERED.

April 12, 2024                                         /s/Indira Talwani
                                                       United States District Judge