**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LENNY COPPOLA, and CHERYL ACCARDI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>-against-<br><br>AMROCK, LLC,<br><br>                    Defendant. | Civil Case No.: 1:23-cv-11639-IT |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
## FLSA SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW
## IN SUPPORT THEREOF

**TABLE OF CONTENTS**

Preliminary Statement...................................................................................................1

Factual And Procedural Background...............................................................................2

Settlement Terms.............................................................................................................4

Argument.........................................................................................................................5

    A.   Standard for Settlement Approval.................................................................5

    B.   The Settlement is Fair and Reasonable Resolutions of a *Bona Fide* Dispute Under

    the FLSA.............................................................................................................6

    C.   Proposed Service Payment to the Named Plaintiffs are Fair

    and Reasonable ..................................................................................................9

    D.   The Attorneys' Fees and Costs Provision of the Settlement Agreement Fairly

    Compensates Plaintiffs' Counsel for the Time and Expense of

    Litigating This Matter......................................................................................11

Conclusion.....................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) ...................................................................6

*Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11–cv–00738–RNC, 2014 WL 3778211

(D. Conn. July 31, 2014) ...........................................................................................................10

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................................5

*Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199 (2d Cir. 2015) ..........................................6

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ...............................................11

*Lapan v. Dick's Sporting Goods,* No. 13 Civ. 11390 (D. Mass. April 19, 2016) .......................12

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219- JGD, 2017 WL 6460244

(D. Mass. June 8, 2017) .............................................................................................................10

*Lynn's Food Stores, Inc. v. U.S., U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982) ................6

*Pallotta v. Univ. of Mass. Mem'l Med. Ctr.*, Civil Action No. 4:22-cv-10361-ADB, 2023 U.S. Dist.

LEXIS 215863 (D. Mass. Dec. 5, 2023) ....................................................................................12

*Roberts v. TJX Cos.,*13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sep. 30, 2016) ......11

*Rodnei de Assis DA Silva v. Voltech Elec., Inc.*, No. 23-cv-10743-DLC, 2023 U.S. Dist. LEXIS 239970

(D. Mass. Oct. 30, 2023) ..............................................................................................................6

*Scovil v. FedEx Ground Package Sys., Inc.*, 1:10- CV-515-DBH, 2014 WL 1057079

(D. Me. Mar. 14, 2014) ...............................................................................................................11

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) .........................10

*Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258 (D. Mass. 2015) ......................6

*Wang v. Masago Neo Asian Inc.,* No. 14 Civ. 6249, 2016 WL 7177514 (E.D.N.Y. Sept. 26, 2016) .......12

**STATUTES**

29 U.S.C. § 216(b) ........................................................................................................................1

29 U.S.C. §§ 201 ......................................................................................................................1, 2

## PRELIMINARY STATEMENT

Named Plaintiffs Lenny Coppola and Cheryl Accardi ("Named Plaintiffs"), individually and on behalf of the individuals that have opted in to this case hereby submit their unopposed motion for approval of their FLSA Settlement Agreement with Defendant Rocket Close, LLC f/k/a Amrock, LLC ("Defendant"). This settlement resolves the claims of 48 individuals (the two Named Plaintiffs and the additional 46 opt-in individuals, collectively the "Collective Members" or "Settlement Collective") under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and related state law claims for a total of $525,000. As detailed below, Plaintiffs contend this proposed resolution of the Collective Members' FLSA claims is fair and reasonable and warrants judicial approval. Defendant Amrock does not oppose this Motion.

Because the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute, the Named Plaintiffs respectfully request that the Court enter an order:

1. Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Granting final certification to the Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only: Named Plaintiffs and the Opt-In Plaintiffs (*i.e.*, all individuals who as of October 22, 2025, have filed an Opt-In Consent Form with the Court in *Coppola v. Amrock LLC*, No. 1:23-cv-11639-IT (D. Mass.), and who are identified in the Settlement Agreement Exhibit A).

3. Approving the Gross Settlement Amount of $525,000.00 in resolution of this action, to be distributed by Defendant as indicated in the proposed Settlement Agreement.

4. Approving the proposed service awards in the amount of no more than $5,000 from the Gross Settlement Amount, allocated as follows: $1,000 for Lenny Coppola, $1,000 for Cheryl Accardi, $1,000 for Lawrence Stein, $1,000 for Wanda Carpenter, and $1,000 for Lisa Arnold.

These service awards recognize individual contributions to the case on behalf of the Collective.

5. Approving Plaintiffs' unopposed request for attorneys' fees, in the amount not to exceed one-third (33.3333%) of the Gross Settlement Amount (after expenses) and reimbursement of actual costs expended in litigating this matter not to exceed $28,500.

6. Dismissing this action with prejudice upon Court approval of the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiffs filed this lawsuit in the United States District Court for the District of Massachusetts on July 21, 2023, alleging that Amrock denied them proper overtime compensation when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C.§ 201, *et seq.* (Count I) and in violation of the Massachusetts and New Hampshire state wage and hour laws (Count II and III). (ECF No. 1). Named Plaintiffs allege that although they routinely worked in excess of forty (40) hours a week, they were not paid proper overtime premiums for all hours worked in excess of forty (40) hours per week, as required by the FLSA. Plaintiffs specifically alleged that Amrock improperly applied the fluctuating work week method for calculating overtime premiums for clocked overtime hours. Plaintiffs also allege that they worked hours off-the-clock that Amrock knew, or should have known, were worked, in violation of federal and state wage and hour laws. *Id.* Plaintiffs filed an Amended Complaint on September 21, 2023. (ECF No. 15).

Defendant denies the allegations in the Amended Complaint and is agreeing to settle this case solely to avoid the additional time and expense of protracted litigation.

Following the filing of the Amended Complaint, on October 5, 2023, Defendant filed a motion to have the case transferred to the Eastern District of Michigan. (ECF Nos. 25-26). That same day Defendant filed an Answer to Plaintiffs' Amended Complaint. (ECF No. 27). The following week Plaintiffs filed two motions – one to invalidate certain class communications, and a second for

conditional certification of the FLSA collective. (ECF Nos. 30-33, 35-36). On April 10, 2024, the Court denied Defendant's motion to transfer. (ECF Nos. 71-73). Thereafter, the parties agreed to mediate the case for all appraisers to attempt to reach a settlement. On May 1, 2024, the Parties filed a joint statement requesting an extension of discovery deadlines and determination on the pending collective certification motion until after a private mediation with experienced mediator, Michael Russell, which was scheduled for July 25, 2024 (ECF No. 77). The Court granted the extension. (ECF No. 78).

In preparation for the mediation, the Parties engaged in informal discovery focused on settlement negotiations. Defendant produced Plaintiffs' payroll records and summary data on total monthly appraisals submitted. This production allowed Plaintiffs' counsel, by and through an expert, to calculate potential damages for the asserted claims. Plaintiffs' Counsel conducted a detailed damages analysis based on the timekeeping records, pay records, and monthly appraisal data produced by Defendant. On July 25, 2024, the Parties engaged in private mediation, which was ultimately unsuccessful.

On August 16, 2024, the Court granted Plaintiffs' motion for conditional certification of the FLSA collective, and the parties then further briefed issues related to notice to the collective. (ECF No. 83-85). On September 12, 2024, the Court issued an order regarding notices to the collective. (ECF NO. 86). Since the initial filing, 46 individuals filed Opt-In Consent Forms with this Court. During the FLSA Notice period, and for months thereafter, the parties engaged in formal discovery, including production of tens of thousands of pages of document discovery and ESI, and four depositions.

Before moving forward with at least 20 or more depositions, the parties agreed to, once again, attempt to reach resolution through private mediation. On July 30, 2025, the Parties engaged in a full-day private mediation with another experienced wage and hour mediator and arbitrator, Alfred Feliu.

After arms' length settlement negotiations during the full-day mediation, the Parties reached an agreement memorialized in a settlement agreement, the essential terms of which are set forth below. Each of the Plaintiffs and Collective Members have reviewed the terms of the settlement and the Settlement Agreement has been executed by the Named Parties.

## SETTLEMENT TERMS

The Settlement Agreement provides for a Gross Settlement amount of $525,000.00. Settlement Agreement ¶ 1. The Gross Settlement Amount includes sums to cover a service award for the Named Plaintiffs and those Opt-in Plaintiffs who sat for depositions not to exceed $1,000.00 each; and attorneys' fees not to exceed one-third (33.333%) of the Gross Settlement Amount after costs are accounted for, or $165,500; and reimbursement of actual costs incurred by Plaintiffs' Counsel of $28,500. *Id.* The Gross Settlement Amount resolves the claims of the Named Plaintiffs and all Collective Members, (i.e., all individuals who opted into this case), a total of 48 people listed in Exhibit A to the Settlement Agreement. *Id.* at ¶ 1. After receiving approval of this Settlement Agreement by the Court, Defendant shall make all the payments contemplated from the Gross Settlement Amount.

The Gross Settlement Amount will be distributed as Settlement Awards to Collective Members based on a calculation that considered the hours worked by each Collective Member and their relative wages during the relevant time period. Specifically, Plaintiffs' counsel, by and through an expert, has calculated the Settlement Awards, pro rata, based on individualized damage calculations that were made using Defendant's time and payroll records and monthly completed appraisal data in advance of the July 30, 2025 mediation. A breakdown of approximate individual Settlement Awards is attached as Exhibit A to the Settlement Agreement.

In exchange for the consideration set forth in this Settlement Agreement, the Collective Members agree to release Defendant, and all of their direct and indirect parent corporation(s), subsidiaries, divisions, affiliates, insurers, reinsurers, business units, representatives, officers, directors,

managers, shareholders, successors and assigns, from any and all local, state, and federal wage and hour-related claims, that may have accrued during each Collective Members' work with Amrock through the date of settlement approval, including claims for unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs, and claims derived from the alleged failure to pay overtime or other due wages during that period that were or could have been brought in the Civil Action. *Id.* ¶ 5.

The Parties also agree to refrain from divulging negative information about each other. And finally, Defendant agrees to respond with neutral reference for any employment reference or verification requests received regarding the Collective Members.

## ARGUMENT

As discussed below, because the Settlement Agreement reached by the Parties represents a fair and reasonable resolution of a *bona fide* dispute, the Court should enter the accompanying proposed order approving the Settlement of the Collective Members' FLSA claims and approving a service award to Plaintiffs Lenny Coppola, Cheryl Accardi, Lawerence Stein, Wanda Carpenter, and Lisa Arnold in the amount of no more than $1,000.00 each and approving the award of attorneys' fees not to exceed one-third (33.333%) of the Gross Settlement Amount after accounting for actual out-of-pocket litigation costs ($164,891) plus reimbursement of the actual out of pocket expenses incurred while litigating this matter, approximately $28,500.

### A.      Standard for Settlement Approval

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two

limited circumstances in which FLSA claims may be compromised are: (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c), or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *See Rodnei de Assis DA Silva v. Voltech Elec., Inc.*, No. 23-cv-10743-DLC, 2023 U.S. Dist. LEXIS 239970, at *4 (D. Mass. Oct. 30, 2023) (citing *Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)); *see also Lynn's Food Stores, Inc. v. U.S., U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and district courts have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

### B.    The Settlement is Fair and Reasonable Resolutions of a *Bona Fide* Dispute Under the FLSA

"The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355).[1] The Settlement Agreement in this case satisfies these criteria. In this case, a *bona fide* dispute exists regarding Plaintiffs' FLSA and any companion state law wage and hour claims. Plaintiffs have alleged, among other claims articulated above, that they and the other Collective Members were not paid proper overtime premiums for all hours worked more than 40 hours per week. *See generally* Amended Compl., (ECF No. 15). Defendant denies these allegations and maintains that the Collective Members were properly compensated. This is sufficient to establish the existence of a *bona fide* dispute. *See, e.g., Singleton*, 146 F. Supp. 3d at 261 ("[T]he Court agrees that the

---

[1] This standard is far less demanding than Federal Rules of Civil Procedure Rule 23, where unnamed class members could have their claims released. Here, the parties to the Settlement Agreement agree to the settlement and no class members will have claims released claims that they did not agree to.

parties' proposed settlement represents a fair and reasonable resolution of this dispute, and that the settlement was reached through arms- length negotiations . . . and it finds that the early settlement of this dispute will avoid potentially lengthy and expensive litigation over what appears to be a modest amount of alleged damages."). In addition, had this case gone forward, Defendant would have likely disputed the propriety of final collective certification in this case, the proper calculation of overtime premiums (time and a half vs. half-time under the fluctuating work week[2]), the amount of off-the-clock hours worked by the Collective Members, if any, and the requisite knowledge of such off-the-clock hours worked by Defendant. Defendant would have further argued that the Company acted in good faith with regard to implementation of the fluctuating work week method for calculating overtime premiums and requiring all hours worked to be recorded by Collective Members, and therefore that liquidated damages are not warranted. Thus, the Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of the Collective Members' claims.

The Settlement also provides a meaningful recovery for Collective Members in this case. Settlement Agreement ¶ 1; Haskell Decl. ¶ 32. The Parties dispute the total amount of compensable hours that Plaintiffs worked that Defendant knew or should have known, and further dispute whether Defendant failed to pay recorded overtime at the proper premium rates. The Gross Settlement Amount, however, represents approximately 97% of Plaintiffs alleged underpayment (presuming the FWW method was properly applied) were they to prevail on their allegations regarding off-the-clock

---

[2] The parties dispute whether Amrock properly used the FWW method to justify payment of a half-time overtime premium. Resolution of this legal claim alone swings damage estimates drastically for the Plaintiffs. For settlement purposes, however, Plaintiffs acknowledge significant risks attendant to litigating this claim to finality, including compensation documents produced by Defendant in the course of discovery.

overtime hours worked, based on a detailed analysis of the possible off-the-clock damages for each of the Collective Members.

The Gross Settlement Amount thus represents a fair compromise between the Parties' competing positions.[3] The average Settlement Award is $6,767.42, and the maximum award is $35,280.17. Settlement Agreement, Ex. A; Haskell Decl. ¶ 37. These are substantial amounts of compensation given this matter primarily deals with off-the-clock time, calculated at half-time rates, and therefore the settlement is an excellent result for the Collective Members in light of the likelihood that, should litigation go forward, the Collective Action members may recover nothing at all, or may face a significantly reduced recovery. *See* Haskell Decl. ¶ 39. Moreover, many of the Collective Members were present at the mediation leading to the Settlement Agreement and each of the Collective Members has reviewed, approved and will be executing the Settlement Agreement, which includes the amount that they will be due to receive if the settlement receives Court approval. *See* Settlement Agreement at Exhibit A.

The formula for allocating settlement awards to the Collective Members is also fair and reasonable. The Settlement Agreement provides for a distribution formula where each Collective Member shall be paid a pro rata portion of the Net Settlement Amount, which will be allocated among Collective Members based on their wages, the number of appraisals submitted each month, and the number of hours and weeks that they worked for Defendant during the relevant time period. The distribution formula weighs estimates of hours worked based on Plaintiffs' appraisal submission data at 90% of the allocation, and factors in estimate hours based on the number of days worked during the collective period at 10%. This formula aims to capture Plaintiffs who were high producers, while

---

[3] Although allegations were pled regarding failure to include incentive compensation in the regular rate plaintiffs have learned through discovery that incentive compensation was included and paid through a line item referred to as "retro OT" on plaintiffs' paystubs.

also accounting for Plaintiffs who worked more days during the collective period but produced fewer appraisal products due to factors like the complexity of appraisal assignments and nature of the geographic territory. Haskell Decl. ¶¶ 28, 36. Thus, those individuals who worked more workweeks, performed more appraisals or more complex appraisals (i.e., worked more hours) and/or received higher wages will receive more on a pro rata basis under the Settlement Agreement. *Id.* All Collective Members will receive at least $938. Haskell Decl. ¶ 38.

The scope of the release in the Settlement Agreement is also fair and reasonable. Collective Members agree to release Defendant, and all of their direct and indirect parent corporation(s), subsidiaries, divisions, affiliates, insurers, reinsurers, business units, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities, from any and all local, state, and federal wage and hour-related claims that accrued during each Collective Members' work with Defendant through settlement approval, including claims for unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs, and claims derived from the alleged failure to pay overtime or other due wages during that period that were or could have been brought in the Action. Settlement Agreement ¶ 5; Haskell Decl. ¶ 40. No non-wage claims are being released under the terms of the Settlement Agreement.

### C.    Proposed Service Payment to the Named Plaintiffs are Fair and Reasonable

The settlement also provides for service payments not to exceed a total of $5,000 to Plaintiffs Lenny Coppola, Cheryl Accardi, Lawerence Stein, Wanda Carpenter, and Lisa Arnold which is fair and reasonable. Settlement Agreement at Exhibit A. These Plaintiffs took on the risk of stepping forward and bringing this case against Defendants on behalf of other Collective Members and/or contributed

to the litigation by taking time out of their day to sit for depositions. Haskell Decl. ¶¶ 41-44. These Plaintiffs provided documents relevant to their work with Defendant, and helped Plaintiffs' Counsel develop their theories of liability and damages models. *See id.* They also provided significant assistance to Plaintiffs' Counsel as they drafted the Complaint, reviewed Defendant's discovery productions, prepared a motion for conditional certification, and prepared a settlement demand. *Id.* The incentive award of no more than $5,000, in total, fairly recognizes the services that they performed in advancing the Collective Members' interests and the time that they dedicated to this lawsuit. *Id.*

Courts in this Circuit have routinely recognized the importance of such awards in wage and hour cases of this nature. *See Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219- JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (quoting *Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11–cv–00738–RNC, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014)) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). The court in *Lauture* recognized the significant "benefits of plaintiffs bringing wage and hour collective and class litigation because, without them, other employees may not assert their rights due to fears 'of retaliation or of being 'blackballed' in [their] industry,'" and approved a $15,000.00 incentive award to each class representative. *Lauture*, 2017 WL 6460244, at *2 (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)). The service award requested in this case properly compensates these Plaintiffs for the risks they took on in coming forward to bring this case, particularly because they continue to work in the real estate appraisal industry.

**D.  The Attorneys' Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiffs' Counsel for the Time and Expense of Litigating This Matter**

The Settlement Agreement further provides for the payment of Plaintiffs' attorneys' fees in the amount not to exceed one-third (33.333%) of the Gross Settlement Amount plus reimbursement of actual litigation costs of $28,500.  Settlement Agreement ¶ 1.  Plaintiffs' Counsel have collectively spent approximately 367 hours advocating on behalf of Plaintiffs and the Settlement Collective, for a combined lodestar of just about $164,000. Haskell Decl. ¶ 46; *see also* Exhibit B, Plaintiffs' Counsel's Time Records. The requested award of not more than one-third of the Gross Settlement Amount (after expenses) is therefore reasonable and should be approved. Also, Counsel's contingency fee agreement with Plaintiffs provides for recovery of fees equal to one-third of the gross recovery, so Plaintiffs' Counsels' request is also in line with their fee arrangement with Plaintiffs.

Fee requests similar to the one made by Plaintiffs here – one-third of the gross settlement with a very modest multiplier, if any, on the lodestar – have routinely been approved by courts, particularly in employment cases. *See e.g, Roberts v. TJX Cos.,*13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *43-45 (D. Mass. Sep. 30, 2016) (finding class counsel's requested fee in an FLSA collective settlement of one-third of the total fund, "reflecting a lodestar multiplier of nearly 2" to be reasonable in light of efforts by class counsel in litigating the case and the "significant risk they assumed in taking the case on a wholly contingency basis") citing *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving attorneys' fees of one-third and finding "multiplier of 2.02" to be "appropriate"); *see also Scovil v. FedEx Ground Package Sys., Inc.*, 1:10- CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) ("contingent fees of one-third are common" and "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts").

Notably, the amount Plaintiffs' Counsel is requesting here is nearly identical to the lodestar and modest compared to what has been approved in this District. Given Plaintiffs' Counsel's

substantial experience in wage and hour litigation,[4] and the result achieved for the Settlement Collective Members, this fee request is reasonable.

Plaintiffs' Counsel also seeks reimbursement of all actual out-of-pocket litigation expenses the firm incurred in prosecuting this matter, in the sum of $28,500. Haskell Decl. ¶¶ 45,46; *see also* Exhibit C, Expense Records.  These expenses include, but are not limited to, travel expenses, court fees, deposition costs, mediation expenses, and expert costs. Such litigation costs have been found to be reasonable and necessary part of wage and hour litigations and are regularly awarded by courts in this district. *See e.g., Lauture v. A.C. Moore Arts & Crafts, Inc.,* No. 17-cv-10219, 2017 U.S. Dist. LEXIS 195147, at *1, *3 (D. Mass. Nov. 28, 2017) (approving costs and fees) (citing *Lapan* v. *Dick's Sporting Goods,* No. 13 Civ. 11390 (D. Mass. April 19, 2016) (approving reimbursement of costs and expenses in the amount of $137,765.61 incurred in connection with the prosecution of the litigation); *Pallotta v. Univ. of Mass. Mem'l Med. Ctr.*, Civil Action No. 4:22-cv-10361-ADB, 2023 U.S. Dist. LEXIS 215863, at *8 (D. Mass. Dec. 5, 2023) (approving $18,688.42 in actual litigation expenses); *Wang* v. *Masago Neo Asian Inc.,* No. 14 Civ. 6249, 2016 WL 7177514, at *4 (E.D.N.Y. Sept. 26, 2016) (awarding $2,500 in litigation costs in addition to attorneys' fees and noting that litigation costs are "ordinarily recoverable.").

## CONCLUSION

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

---

[4] Working Solutions Law Firm, counsel for Plaintiffs, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully been appointed class-counsel in many cases arising under state and federal wage laws. The credentials of Plaintiffs' counsel are fully detailed in the Haskell Declaration.

1. Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2. Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only: Named Plaintiffs and the Opt-In Plaintiffs (*i.e.*, the individuals who as of October 22, 2025, have filed an Opt-In Consent Form with the Court in *Coppola v. Amrock LLC*, No. 1:23-cv-11639-IT (D. Mass.), and who are identified in the Settlement Agreement) (the "Collective Members").

3. Approving the Gross Settlement Amount of $525,000.00 in resolution of this action.

4. Approving the proposed service awards in a total amount of not more than $5,000.00, from the Gross Settlement Amount to Plaintiffs Lenny Coppola, Cheryl Accardi, Lawerence Stein, Wanda Carpenter, and Lisa Arnold.

5. Approving Plaintiffs' unopposed request for attorneys' fees, in the amount of not more than $165,500, which is to be paid from the Gross Settlement Amount.

6. Approving Plaintiffs' unopposed request for reimbursement of actual out-of-pocket expenses, not to exceed, $28,500, which is to be paid from the Gross Settlement Amount.

7. Dismissing this action with prejudice upon Court approval of the settlement.

8. Reserving exclusive and continuing jurisdiction over this action, the named Plaintiffs, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

Respectfully submitted,

Dated:    October 21, 2025
          New York, New York

                                        /s/ Rachel M. Haskell
                                        _____
                                        Rachel M. Haskell (BBO #: 685656)
                                        Jessica Cahill (BBO #: 685094)
                                        Working Solutions Law Firm
                                        80 Broad Street, Suite 703
                                        New York, NY 10004
                                        19176351218
                                        rhaskell@workingsolutionsnyc.com
                                        jcahill@workingsolutionsnyc.com
                                        *Attorneys for Named Plaintiffs and Collective Members*