**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LENNY COPPOLA, and CHERYL ACCARDI, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>-against-<br><br>AMROCK, LLC,<br><br>    Defendant. | Civil Case No.: 1:23-cv-11639-IT |

<u>DECLARATION OF RACHEL M. HASKELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE FLSA SETTLEMENT</u>

  RACHEL M. HASKELL, an attorney duly admitted to practice law in the Courts of the Commonwealth of Massachusetts, pursuant to 28 U.S.C. § 1746(2), declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

  1.  I am an attorney admitted to practice before the courts of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts. I am a Partner at Working Solutions Law Firm, Counsel for Plaintiffs in the above-captioned matter. As such, I am fully familiar with the facts and circumstances stated herein.

  2.  I make this declaration in Support of the Plaintiffs' Unopposed Motion for Approval of the Settlement Agreement. All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement executed by the Parties and attached hereto as **Exhibit 1**.

**Pre-Suit Investigation and Pre- Discovery**

3. Prior to filing this action, Plaintiffs' Counsel conducted a lengthy investigation concerning the facts and law relevant to this matter.

4. Plaintiffs' Counsel had multiple telephone conferences with the named Plaintiffs Lenny Coppola, Cherly Accardi and other Plaintiffs, all of whom are current or former real estate appraisers employed by Defendant Amrock LLC. Plaintiffs' counsel spoke at length with many of the Plaintiffs who opted into this case regarding appraiser job duties, hours worked, compensation received, and Defendant's policies related to timekeeping and overtime compensation.

5. Plaintiffs' Counsel received and reviewed documents provided by the Plaintiffs, including appraiser compensation records, appraisals logs, compensation plan information and other policy documents.

6. Plaintiffs' Counsel conducted numerous interviews of Plaintiff-appraisers about their hours worked and pay practices while employed by Amrock.

7. Plaintiffs' counsel also conducted legal research regarding the elements and standards of the Plaintiffs' claims, decertification risks, factually similar claims, anticipated defenses, and damages.

8. On July 31, 2023, Plaintiffs filed the above-captioned collective action lawsuit on behalf of real estate appraisers who worked for Defendant Amrock LLC. On September 21, 2023, Plaintiffs filed an Amended Complaint. (ECF No. 15). The Amended Complaint asserted claims against Amrock for: (1) off-the-clock hours worked by Appraisers, and (2) improper application of the Fluctuating Work Week method ("FWW") to compensate for

clocked overtime hours. *See generally* Amended Complaint. (ECF No. 15). Plaintiffs sought damages for: (i) claims for unpaid overtime, (ii) unlawful application of the FWW methodology, and (iv) attorneys' fees and costs, interest, and liquidated damages. *Id.*

9. On October 5, 2023, Defendant filed an Answer to Plaintiffs' Amended Complaint and a motion to have the case transferred to the Eastern District of Michigan. (ECF Nos. 25-26).

10. On October 13, 2023, Plaintiffs filed two motions, one to invalidate class communications and another seeking conditional certification of the collective. (ECF Nos. 30-33, 35-36).

11. On April 10, 2024, the Court denied Defendant's motion to transfer. (ECF Nos. 71-73).

12. Shortly thereafter, the Parties conferred and agreed to mediate the case and attempt to reach a resolution before beginning formal discovery.

13. In July 2024, the parties participated in a private mediation with experienced wage and hour mediator, Michael Russell.

14. The mediation did not result in a settlement.

**FLSA Collective Notice**

15. On August 16, 2024, shortly after the failed mediation, the Court granted Plaintiffs' motion for conditional certification of the FLSA collective. (ECF No. 83-85).

16. On September 12, 2024, the Court issued an order regarding the form and substance of the notices to be sent to the Collective. (ECF No. 86).

17. Thereafter, notices of the collective action were distributed to the FLSA

collective and 46 individuals submitted opt-in forms to participate in the claims of this litigation.

**Fact Discovery**

18. The Parties have engaged in formal discovery including the exchange of tens of thousands of pages of documents.

19. In particular, the Parties have exchanged payroll records, historical appraisal data, compensation plans, e-mails and other internal communications related to Company roll-out of compensation plans, and other documents responsive to ESI search terms.

20. The Parties conducted four depositions of Plaintiff-appraisers: Lenny Coppola, Lawerance Stein, Wanda Carpenter, and Lisa Arnold.

21. As the Notice Period ended the parties met and conferred regarding the scope of opt-in discovery.

22. Based on the information provided by the Named and Opt-in Plaintiffs, and Counsels' review of Defendant's productions, Counsel was able to fully assess Plaintiffs' litigation risks related to proceeding as a collective action and assess damages.

**Damages Calculations and Assumptions**

23. With the benefit of sufficient discovery, Plaintiffs' Counsel calculated the probable underpayments for the Plaintiffs by and through a damages expert retained by Counsel (the "Expert").

24. To calculate damages, Counsel provided the Expert with data for the Plaintiffs, including payroll records, monthly summaries of appraisal submission records, and timekeeping records.

25.     The documentary evidence and testimony revealed that the time for completion of an appraisal can vary significantly depending on the complexity of the assignment. For purposes of conducting a damages calculation, Plaintiffs' Counsel and their retained Expert employed a methodology that assumed an average of 8 hours per appraisal assignment and an average of 2.5 hours of unclocked administrative work each week.[1]

26.     The Expert used the timekeeping and appraisal records, and applied assumptions as to hours worked each week to calculate overtime damages.

27.     The Expert then compared expected hours worked based on appraisal submission data to the actual hours clocked each workweek to derive an under-report factor. This methodology was employed to estimate the percentage of hours an appraiser was underreporting their actual hours worked based on their appraisal production numbers.

28.     The distribution formula for settlement awards applied to this Settlement weighs Plaintiffs' appraisal submission data at 90% of the allocation, and factors in the number of days worked during the collective period at 10% of the allocation. This formula captures Plaintiffs who were high producers, while also accounting for Plaintiffs who worked more days during the collective period but produced less appraisal products due to factors like the complexity of appraisal assignments and nature of their geographic territory.

**Settlement Negotiations**

29.     After the exchange of information above, but prior to additional depositions and further discovery, the parties agreed to proceed with a second private mediation with

---

[1] The 8-hours per appraisal assumption was derived, in part, from Amrock's own internal records reflecting an 8- or 9-hour average for appraisals.

5

another experienced wage and hour mediator, Alfred Feliu.

30. As a result of the mediation the Parties reached an agreement as to the resolution of FLSA claims for the Collective, as defined in the Amended Complaint and any companion state law claims, the terms of which are set forth in the Settlement Agreement. Ex. 1.

31. The settlement reached represents a meaningful percentage of the recovery that the Plaintiffs may have achieved had they prevailed on all claims.

32. For the overtime damages, the range of recovery is varied widely based on months worked during the collective period as well as production levels of each of the appraisers.

33. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

## **Plaintiffs Contend that the Proposed Settlement Reflects a Fair and Reasonable Resolution of this Lawsuit**

34. The Parties agreed to settle this case for a Gross Settlement Amount of five hundred and twenty-five thousand dollars ($525,000). Ex. 1 at ¶1.

35. The Gross Settlement Amount here ***includes*** an award for court-approved attorneys' fees and costs for Plaintiffs' Counsel and all amounts to be paid to Plaintiffs, and Service Awards to the Named Plaintiffs and Plaintiffs who sat for depositions.

36. As mentioned above, the distribution formula captures Plaintiffs who were high producers during their employment at Amrock, while also accounting for Plaintiffs who worked more days during the collective period but produced less appraisal products due to factors like the complexity of appraisal assignments and nature of the region in which they

6

performed appraisal work.

37.     The average Settlement Award is $6,767.42, and the maximum award is $35,28.17.

38.     Each Plaintiff is receiving at least $938.00.

39.     I believe the negotiated settlement is fair and reasonable and provides a good result for Plaintiffs with respect to their overtime claims. This is particularly true in light of the disputed issues of fact and law and the possibility that an outcome after motion practice and trial could lead to a less favorable outcome for Plaintiffs.

**Releases**

40.     All Plaintiffs shall be deemed to have released the Defendant, as defined in the Settlement Agreement, from all liability, damages, expenses, or costs arising under the FLSA and any other applicable federal, state, or local wage and hour law, including without limitation for attorneys' fees and costs arising therefrom. *See id.* at ¶ 5.

**Service Payments**

41.     Named Plaintiffs Lenny Coppola and Cheryl Accardi have served the Collective by providing important information in the pre-filing investigative phase, participating in numerous phone interviews with Plaintiffs' counsel, and putting their names to a public litigation.

42.     In addition, Mr. Coppola also prepared for, attended and participated in a deposition.

43.     Lawerence Stein, Wanda Carpenter, and Lisa Arnold also prepared and sat for a deposition in this matter.

44.     The modest settlement awards of $1,000 each fairly recognize the services that these Plaintiffs performed in dedicating time to this lawsuit and advancing the interests of the Collective.

**Attorneys' Fees and Costs**

45.     Consistent with the Settlement Agreement, Plaintiffs' Counsel has applied for payment of attorneys' fees in an amount of $165,500, no more than one-third (33.333%) of the Gross Settlement Amount after accounting for reimbursement of actual out of pocket expenses of approximate $28,500. *See* Exhibit 2, Expense Report.

46.     Plaintiffs' Counsel have collectively spent over 364 hours advocating on behalf of the Collective for a combined lodestar of $164,891. *See* Exhibit 3, Contemporaneous Time Records.

47.     The Gross Settlement Amount, and distributions therefrom, are broken down as follows:

> **Gross Settlement Amount: $525,000**
>
> Less Expenses & Costs (Requested): $28,500
>
> Less Attorneys' Fees (Requested): $165,500
>
> Less Plaintiff Service Payments (Requested): $5,000
>
> **Net Settlement Amount (to be distributed to Collective): $326,000**

**Plaintiffs' Counsel's Biographical Information**

48.     The attorneys and staff at Working Solutions Law Firm billed at the following rates:

> A.   Rachel Haskell: $500-600 per hour;
> B.   Christopher Davis: $500-600 per hour;

8

       C.       Brendan Sweeney: $500-600 per hour;
       D.       Jessica Cahill: $450 per hour;
       E.       Rowan Laidlaw: $300 per hour;
       F.       Law Clerk/Paralegal: $150 per hour.

49. The retainer letters also provide for Plaintiffs' Counsel to receive 33.3% of the gross amount recovered for the Collective. These rates are consistent with rates this Firm has been awarded in class or collective actions in the past year. *See e.g., Perez Ventura v. Nelson Services Systems, Inc.*, Index No. 651132/2022 (Sup. Ct., NY County) (granting fee request from Working Solutions with same rates of pay); *McIntosh v. InquistHealth, Inc*, Case No. BER-L-003714-24 (N.J. Super. Law Div.) (granting fee request from Working Solutions with same rates of pay).

50. I am a Partner at Working Solutions. I have been practicing law for 12 years with an exclusive focus on litigation of labor and employment cases.

51. I am a member of the bar in the States of New York, Massachusetts, and New Jersey admitted in May 2013, November 2012, and October 2024, respectively. I am admitted to practice in the U.S. District Court for the Eastern, Southern and Northern Districts of New York, the District of Massachusetts, and the District of New Jersey. I earned my Bachelor of Arts from the College of Letters and Sciences and a certificate in Integrated Liberal Studies from the University of Wisconsin-Madison where I earned Dean's List honors. I graduated with a Juris Doctor from Northeastern University School of Law in 2012

52. I previously worked for Mr. Davis at Stoll, Glickman & Bellina, LLP ("SGB") exclusively in the Firm's Employment Litigation Practice and was hired by Mr. Davis as an Associate when he left SGB to start his own firm (Working Solutions) in July 2014. I became a partner at Working Solutions in December 2019.

9

53. As an Associate, and then as a Partner, I have served as lead attorney on numerous nationwide class and collective actions. I have extensive experience managing and litigating overtime lawsuits, including lawsuits brought under the FLSA and hybrid class and collective actions.

54. For example, I was the lead associate, and later junior partner, on a hybrid class and collective action overtime lawsuit brought against a staffing agency (*Park v. FDM Group Inc. et al*; 1:16-cv-01520-LTS-SN (SDNY)). During the case, I managed all aspects of litigation, including discovery, wrote a motion to reconsider the granting of a motion to dismiss that revitalized the litigation, drafted and filed a winning FLSA class certification brief that ultimately pushed the case into a settlement posture and resulted in a well-received and successful settlement

55. While at SGB, the firm was appointed Class Counsel in *Oleniak et al. v. Time Warner Cable, Inc. et al.*, 1:12-cv-03971(KPF) (SDNY), an overtime class and collective actions in which I served as the lead associate. SGB was also putative class counsel in *Jacobs et al v. Major Energy Services LLS/Respond Power LLC et al.*, 2012-CV-04842 (EDNY), *Alexander et. al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY), and *Hibbert et al. v. Central Parking Systems, Inc.*, 1:12-cv-07970-VSB (SDNY), each of which I was the lead associate on the case.

56. Since starting at Working Solutions in July 2014 we have been appointed class counsel in numerous class and collective actions that I have been either the lead partner or lead associate on, including but not limited to: *Alexander et al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY); *Hibbert et al. v. Central Parking Systems, Inc.*, 1:12-cv-07970-VSB (SDNY); *Hartley et al v. Wells Fargo & Company et al*, 2:14-cv-05169 (EDNY); *Douglas v. Allied*

*Universal Security Services, et al.*, Case No. 17-cv-6093; *Lobbe et al v. Cablevision System Corp. et al*; 1:16-cv-02207-AKH (SDNY); *Villegas et al v. Cablevision Systems New York City Corp. et al*; 1:17-cv-05824-VMS (EDNY); *Park v. FDM Group Inc. et al*; 1:16-cv-01520-LTS-SN (SDNY); and *Sheikh et al v. Align Communications, Inc.*; 1:15-cv-07549-LGS (SDKY); *Pulliam et al v. Trans Express, Inc. et al;* 1:19-cv-4038 (EDNY); *O'Conner et al v. Agilant Solutions Inc.*, 1:18-cv-06937-GHW (SDNY); *Lipinski et al v. Approved Plumbing and Fire Protection LLC et al*, 19-cv-04534-AMD-ST (EDNY); *Roman v. Wheels on the Bus, Inc., et al.,* Case No. 1:21-cv-06377-SJB; *Perez Ventura v. Nelson Services Systems, Inc.*, Index No. 651132/2022 (Sup. Ct., NY County); *McIntosh v. InquistHealth, Inc*, Case No. BER-L-003714-24 (N.J. Super. Law Div.).

57. I have taken and defended numerous depositions in FLSA/Rule 23 collective and class action cases, and managed large scale document collection and review for cases involving hundreds, and at times thousands, of class and collective members. I have settled or participated in settlement negotiations of more than 15 collective and/or class actions.

58. Jessica Cahill is of Counsel at Working Solutions. She has more than four years of experience in employment law including supporting the Firm's work in class and collective actions. Ms. Cahill joined Working Solutions in October 2021. She is a member of the Connecticut, Massachusetts, New York state bars and is admitted to practice in the U.S. District Court for the District of Massachusetts and the U.S. District Court for the Southern District of New York. Ms. Cahill earned her Bachelor of Arts from the Bucknell University where she earned Dean's List honors. She graduated with a Juris Doctor from Northeastern University School of Law in 2012.

59. Prior to joining Working Solutions Law Firm, Ms. Cahill served as an Assistant

District Attorney in Massachusetts, where she was responsible for handling all aspects of a diverse felony and misdemeanor caseload, from conducting evidentiary hearings and drafting pretrial pleadings, to presenting cases for bench and jury trials. Ms. Cahill was then appointed to the Appeals Unit where she drafted briefs and petitions for interlocutory appeals and successfully argued several cases before the Massachusetts Appeals Court.

60. Christopher Davis is the Founding Partner of Working Solutions and has been practicing law for 20 years with a primary focus on litigation of labor and employment law cases. He is a member of the bar of the State of New York and also admitted to practice before the Second Circuit Court of Appeals, and the U.S. District Court for the Eastern, Southern and Northern Districts of New York. He earned my B.A. in from The College of the Holy Cross in Worcester, Massachusetts in 1995 and J.D. from the Catholic University of America in Washington, D.C in 2001.

61. From 2001 to 2006, he was employed as an Assistant District Attorney in the Manhattan District Attorney's Office. In 2006 he entered private practice as an Associate with the employment law firm Thompson Wigdor LLP ("TW"), now Wigdor LLP, assuming responsibility over several plaintiffs and management-side lawsuits. Mr. Davis left TW in 2009, and gained employment with The Ottinger Firm, P.C., where he served as the firm's Managing Attorney responsible for all aspects of the firm's operations, including managing and serving as lead attorney on numerous nationwide class and collective actions. He has extensive experience managing and litigating overtime lawsuits, including lawsuits brought under the FLSA.

62. Throughout his career Mr. Davis has served as lead counsel on over twenty class

and collective actions, including but not limited to: *Landin et al. v. UBS et al*, 10-CV-711 (SDNY), *Bardouille v. Goldman Sachs & Co.*, 10-cv-4285 (SDNY), *Fouathia v. Gurwich Products*, 10-CV-5411 (SDNY), *Gomez v. Gravitas Technology, Inc.*, 10-CV-6412 (SDNY), *Martinez v. Forest Laboratories, Inc. et al*, 10-CV-06032 (SDNY), *McKenzie v. Schulte Roth & Zabel LLP*, 11-CV-3991 (SDNY), *Butt v. Megabus Northeast, LLC,* 11-CV-3993 (SDNY), *Orgill v Ingersoll-Rand Co.*, NY County Index No. 101142/10, *Bryan, et al. v. Urban Telecommunications, Inc., et al.*, 12-CV-2186 (SDNY), *Oleniak et al. v. Time Warner Cable, Inc. et al.*, 1:12-cv-03971(KPF) (SDNY), *Jacobs et al v. Major Energy Services LLS/Respond Power LLC et al.*, 2012-CV-04842 (EDNY), *Alexander et. al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY), *Hibbert et al. v. Central Parking Systems, Inc.*, 1:12-cv-07970-VSB (SDNY), *Hartley et al v. Wells Fargo & Company et al*, 2:14-cv-05169 (EDNY), *Lobbe v. Cablevision System Corp., et al.*, 1:16-cv-02207-AKH (SDNY), *Villegas v. Cablevision Systems Corp., et al*, 1:17-cv-05824-VMS (EDNY), *Watson v. Cablevision Systems Corp., et al*, Index No. 502848/2018 (Kings Cty Sup), *Bannerman v. Air-Sea Packing Group Inc., et al* Case No. 18-cv-6146 (SDNY), *Park et al v. FDM Group Inc.*, 1:16-cv-01520-LTS-SN (SDNY), *O'Conner et al v. Agilant Solutions Inc.*, 1:18-cv-06937-GHW (SDNY), *Pulliam et al v. Trans Express, Inc., et al*, 1:19-cv-04038-RRM-VMS (EDNY).

63.     Brendan Sweeney was a Partner at Working Solutions from November 2021 until December 2024. He has more than twenty-five years of experience in employment law. Mr. Sweeney is a member of the New York bar and is admitted to practice in the U.S. District Court for the Southern and Eastern Districts of New York. He earned a Bachelor of Arts degree from St. John Fisher College in 1992 and a Juris Doctor from Villanova Law School in 1997 (Magna Cum Laude and Order of the Coif).

64. During his first year after graduating law school, he was a law clerk to Honorable James McGirr Kelly of the United States District Court, Eastern District of Pennsylvania.

65. After clerking, he has focused his practice on employment law and has developed expertise in class and collective action litigation.

66. From 1998 to 2005 he was an Associate in the Labor and Employment law departments of Morgan, Lewis & Bockius and Seyfarth Shaw.

67. From 2005 to 2016, he held a number of in-house counsel roles at Morgan Stanley and Luxottica Group. For ten years, he was Global Head of Litigation and Employment Law for Luxottica Group.

68. From 2016 to 2021, he was Of Counsel/Principal in the labor and employment law departments of Seyfarth Shaw and Jackson Lewis. While at Seyfarth Shaw, his billable rate was $750 per hour. While at Jackson Lewis his billable rate was $650 per hour.

69. Mr. Sweeny has extensive experience managing and litigating class and collective lawsuits for both defendants and plaintiffs. He has have taken and defended numerous depositions in all types of employment litigation, including collective and class action cases.

70. He has also settled or participated in settlement negotiations of more than 25 collective and/or class actions.

71. The following are some of the cases in which he has been lead counsel or played a significant role on a litigation team: *Cucinotta v. Personal Touch Holding Corp.*, 19-CV-0057 (SJF)(AYS) (EDNY); *Watterson v. RUI Mgmt. Servs., Inc.*, 20-CV-1783 (GRB)(JMW) (EDNY); *Durling v. Papa John's International, Inc.*, 16 Civ. 3592 (CS)(JCM) (SDNY); *Zorilla v. Carlson Restaurants, Inc.* 14 Civ. 2740 (AT)(GWG) (SDNY); and *Chan v. Big Geyser*, 17-CV-6473

14

(ALC)(SN) (SDNY).

72.     Rowan Laidlaw is a former associate of Working Solutions Law Firm. Ms. Laidlaw began her career as an Associate at the Firm after graduating from Northeastern University School of Law as a scholar in the Program for Human Rights and the Global Economy. She is also a member of the National Lawyers Guild. During law school, Rowan was a law clerk at Root and Rebound in Oakland, CA. There, she advocated for clients who were unlawfully discriminated against by employers due to past criminal records, and participated in community events such as Know Your Rights presentations and criminal record clearing workshops. Rowan was also a law clerk at Lakota People's Law Project in Bismarck, ND, where her work centered around researching and advocating for the protection of the Indian Child Welfare Act, a federal law that was enacted to remedy past, and prevent future discrimination against Native Peoples and Tribes. Additionally, Rowan clerked at Working Solutions Law Firm, growing her legal skills and interest in protecting workers' rights. Ms. Laidlaw is a graduate of University of Oregon, summa cum laude and she obtained her law degree from Northeastern University School of Law.

73.     Entries for "Law Clerk" or "Paralegal" reflect work performed by law students, paralegals, or other administrative assistants who worked for Working Solutions Law Firm. Law Clerks and Paralegals typically performed client management, document collections, and other administrative or research-based tasks.

Dated: October 21, 2025
      New York, New York

                                           Respectfully Submitted,

                                           **/s/ Rachel M. Haskell**
                                           **Working Solutions Law Firm**
                                           80 Broad Street Suite 703
                                           New York, New York 100074
                                           Tel. 646-430-7930
                                           rmhaskell@workingsolutionsnyc.com