**WORKING SOLUTIONS**

October 22, 2025

**By ECF**

Hon. Judge Indira Talwani
United States District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

Re:    *Coppola, Lenny et al v. Amrock, LLC*; Case No. 1:23-cv-11639-IT

Dear Judge Talwani:

Attached please find a supplemental copy of the Settlement Agreement (Attachment 1 to Plaintiffs' Affidavit in Support of Motion for Settlement Approval) countersigned by Defendant Amrock LLC. (ECF No. 128). Together with the original Attachment 1 executed by named Plaintiffs Lenny Coppola and Cheryl Accardi, these documents constitute one Agreement.

Therefore, the Parties respectfully request that the Court consider these two copies as one executed Agreement. We thank the Court for its attention to this Matter.

  FOR PLAINTIFFS

    WORKING SOLUTIONS LAW FIRM

By:  *Jessica G. Cahill*
    Jessica Cahill, BBO #685094
    Rachel M. Haskell, BBO #658656


**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this 22nd day of October 2025, she did file this document using the CM/ECF system which will send notice of its filing to all counsel of record.

Dated:  October 22, 2025                      /s/  *Jessica G. Cahill*

Docusign Envelope ID: 2535B1DA-4749-4069-AF6C-564E0D3ACFCE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LENNY COPPOLA, and CHERYL ACCARDI, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>-against-<br><br>AMROCK, LLC,<br><br>      Defendant. | Civil Case No.: 1:23-cv-11639-IT |

## NEGOTIATED SETTLEMENT AGREEMENT AND RELEASE

  This Negotiated Agreement and Release ("Agreement") is between Lenny Coppola ("Coppola") and Cheryl Accardi ("Accardi") (Coppola and Accardi are referred to as "Plaintiffs") on behalf of themselves and on behalf of the FLSA Collective Members (as that term is defined herein) and Rocket Close, LLC f/k/a Amrock, LLC ("Defendant"). The Plaintiffs, the FLSA Collective Members, and the Defendants are collectively, the "Parties".

  **WHEREAS**, on July 21, 2023, Lenny Coppola and Cheryl Accardi commenced a lawsuit under the Fair Labor Standards Act ("FLSA"), the Massachusetts Minimum Fair Wages Act, and the New Hampshire Minimum Wage Law ("State Law Claims") in the United States District Court for the District of Massachusetts on behalf of themselves and on behalf of all current or former Appraisers employed by Defendant captioned *Coppola, et al. v. Amrock, LLC,* 1:23-cv-11639-IT (the "Civil Action"). An additional forty-six (46) plaintiffs filed consent forms to join the Fair Labor Standards Act ("FLSA") collective action ("FLSA Collective Members").

  **WHEREAS**, on September 21, 2023, Plaintiffs Coppola and Accardi filed a First Amended Collective and Class Action Complaint (ECF Doc. No. 15);

  **WHEREAS,** while litigating the Civil Action, the Parties participated in a mediation on July 25, 2024, which was unsuccessful. Thereafter, the Parties conducted discovery;

  **WHEREAS**, the Parties retained Alfred Feliu, a mediator based in New York City, NY to assist in the effort to resolve the Civil Action on July 30, 2025, during which the Parties discussed the claims and defenses relating to the Civil Action and reached a settlement of the Civil Action;

  **WHEREAS**, the Parties have made a thorough and independent investigation of the facts and law relating to the allegations in the Civil Action including, specifically, the claims set forth therein. In entering into this Settlement Agreement, the Parties have considered: (a) the facts developed during their investigations, discovery, and the applicable law; (b) the attendant risks of

*Execution Copy*

continued litigation and the uncertainty of the outcome of the claims; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement. The Parties have each concluded that it is in their best interests to settle the claims under the terms set forth herein; and

**WHEREAS**, counsel of record for both Parties in the Civil Action have negotiated extensively and in good faith, including attendance at two mediations to reach a settlement acceptable to the Parties that constitutes a reasonable compromise of the *bona fide* disputes between the Parties and reached a settlement in principle on July 30, 2025;

**WHEREAS**, the Parties understand and agree that neither the making of this negotiated Agreement nor anything contained herein shall in any way be construed or considered to be an admission by Defendant of liability, guilt or noncompliance with any federal, state, city, or local statute, constitution, rule, ordinance, public policy, wage-hour law, wage-payment law, tort law, contract, common law, or of any other wrongdoing, unlawful conduct, liability or breach of any duty whatsoever to Plaintiffs;

**WHEREAS**, Plaintiffs with full assistance and by consulting counsel, freely and voluntarily enter into this Agreement in exchange for the promises contained herein and the full payment due from Defendant as provided for below;

**WHEREAS**, the Parties acknowledged and agree that Plaintiffs and all FLSA Collective Members are intended to be bound by each and every term of this Agreement, of which they have been advised by their counsel; and

**WHEREAS**, the terms and conditions of this Agreement, including this Release, have been explained to the Parties by their counsel;

**NOW THEREFORE**, in consideration of the mutual promises and covenants set forth in this Agreement, as well as the good and valuable consideration provided for herein, the receipt and sufficiency of which is hereby acknowledged, and incorporating the above "Whereas" clauses in this Agreement, the Parties agree as follows:

### DEFINITIONS

**Definitions**. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a. "**Collective Members**" means the Plaintiffs and the FLSA Collective Members employed by the Releasees who have filed an opt-in form in this matter, and whose claims have not been dismissed, and who are listed in Exhibit A hereto.

b. "**Releasees**" means Rocket Close, LLC f/k/a Amrock, LLC and each of its past, present, and future parent companies, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof, both

    individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities.

  c.  **"Plaintiff's Counsel" or "Collective Counsel"** means Working Solutions Law Firm, PLLC.

  d.  **"Defendants' Counsel"** means Jackson Lewis P.C.

## SETTLEMENT SUM AND AWARD CALCULATION

**1.**   **Settlement Sum.** In exchange for signing this Agreement and fulfilling their obligations herein—including the release, waiver, and dismissal with prejudice of all FLSA claims by the Collective Members—Defendant agrees to pay a total settlement amount of **Five Hundred Twenty-Five Thousand Dollars ($525,000.00)** (the "Gross Settlement Sum"). This amount includes all attorney's fees and costs and constitutes full satisfaction of all federal and state-law claims asserted in the Civil Action, including, but not limited to, claims under the FLSA and any other federal, state, or local wage-related statutes or common law claims that Plaintiffs and Collective Members have or may have against the Releasees (as defined below).

The Gross Settlement Sum shall be allocated as follows:

  a.  **Attorneys' Fees and Costs**: Approved attorneys' fees and costs shall be deducted first from the Gross Settlement Sum.

  b.  **Service Awards**: Approved service awards shall be deduced next from the Gross Settlement Sum.

  c.  **Distribution to Plaintiffs and Collective Members**: The remaining funds shall be distributed among Plaintiffs and Collective Members in accordance with the allocation chart attached as **Exhibit A**, which is incorporated by reference.

  d.  **Payment Administration**: Defendant shall self-administer all settlement payments, which may be made by check or direct deposit. If payment is made by check, it shall be delivered to:

**Working Solutions Law Firm PLLC**
c/o Rachel Haskell
80 Broad Street, Suite 703
New York, NY 10004

**2.**   **Timing of Settlement Payment.** The payment of the Settlement Sum shall be made within 30 days after the Court approves this Agreement and dismisses Plaintiffs' claims with prejudice by so ordering the stipulation and proposed order attached as "**Exhibit B**," and all Collective Members and Plaintiffs' counsel complete, execute, and submit to Defendants counsel completed IRS tax forms (IRS FORM W-4 and IRS FORM W-9 Misc). For payments which will made by direct deposit, each Collective Member shall return the direct deposit form attached as

3
*Execution Copy*

**Exhibit C**. Plaintiffs and the Collective Members agree and acknowledge that Defendant and Defendant's counsel have not made any representations to them regarding the tax consequences of any payments or amounts received pursuant to this Agreement. Plaintiffs and the Collective Members agree to indemnify Defendant against the payment of any taxes, interests, penalties, and other liabilities or costs that may be assessed upon their portion of the Settlement Sum. Provided, however, that nothing within this paragraph shall require Collective Members to indemnify or hold Defendant harmless for its own negligence or intentional misconduct with respect to calculating, withholding or remitting from the payments set forth above the appropriate amount of taxes and other withholdings as required by IRS or State law or regulations.

3. **Execution of Agreement**: For this agreement to be effective, Plaintiffs shall provide Defendant with a fully executed copy of this Agreement executed by Plaintiffs and all opt-ins.

4. **No Consideration Absent Execution of this Agreement.** Collective Members understand and agree that Collective Members would not receive the monies specified in Paragraph 1 above, except for their execution of this Agreement and all of the FLSA Collective Members fulfillment of the promises contained herein, respectively.

5. **Procedure.** After this Agreement is executed by the Parties, the Parties will jointly submit the Agreement to the Court for the Court's consideration and approval. Plaintiffs' Counsel shall draft and submit to Defendant for Approval an unopposed motion to approve the settlement. The Court's approval of all provisions of this Agreement is a material term of this Agreement. Plaintiffs and the FLSA Collective Members believe that this settlement is fair and reasonable and authorizes their attorneys to seek approval of the settlement as fair and reasonable and to seek dismissal of the Civil Action with prejudice.

## RELEASE

6. **Release of Wage and Hour Claims**. Collective Members, along with their heirs, executors, administrators, successors, and assigns, voluntarily release and forever discharge Defendant and its affiliates—including any parent companies, subsidiaries, predecessors, successors, assigns, and affiliated entities—and all of their respective trustees, current and former officers, agents, directors, members, managers, supervisors, employees, shareholders, and representatives, in both individual and representative capacities (collectively, the "Releasees"), from any and all claims related to wages and hours.

This release includes, but is not limited to:

- Claims under the Fair Labor Standards Act (FLSA);

- Claims under any existing state wage and hour laws, including but not limited to:
    - Massachusetts Wage Payment Statute (G.L. c. 149, §§ 148–152A, et seq.);
    - Massachusetts Wage and Hour Laws (G.L. c. 151 § 1A et seq.);
    - California Labor Code §§ 200–558, § 1194, and § 206.5;
    - Illinois Wage Payment and Collection Act (820 ILCS 115/1 et seq.);
    - Oregon Wage and Hour Laws (ORS Chapters 652 and 653);

- o Washington Minimum Wage Act (RCW 49.46);
- o New Hampshire Wage Payment and Work Hours Laws;
- o Any other federal, state, or local law, rule, regulation, or ordinance related to wage and hour;
- o Any claims under public policy, contract, tort, or common law related to wage and hour;
- o Any basis for bringing claims for costs, fees, penalties, or other expenses, including attorneys' fees, expert fees, and mediator fees;
- o Any claims asserted or that could have been asserted in the Civil Action.

This release applies to all wage related claims—known or unknown, suspected or unsuspected—Collective Members may have against the Releasees as of the date this Agreement is executed by both Parties. Collective Members expressly waive the protections of California Civil Code Section 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

This shall be a full and final release of all wage related claims known and unknown, foreseen and unforeseen, which have accrued to Collective Members against Defendant or any Releasee up to and including the date of this Agreement, regardless of the adequacy of the compensation or the extent or character of his/her injuries and/or damages, known or unknown, and is intended to buy peace from any such claims. Collective Members expressly acknowledge and assumes all risk, chance, or hazard that any injuries and/or damages resulting from his/her employment with Defendant may become permanent, progressing, greater, or more extensive than is known, anticipated, or expected.

7. **Claims Not Released.** Collective Members are not waiving any rights they may have to: (i) Collective Members' own vested or accrued employee benefits under Defendant's qualified retirement benefit plans; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived or released by signing this Agreement; or (iv) enforce this Agreement.

   a. **Governmental Agencies.** Nothing in this Agreement limits Collective Members' ability to engage in protected activity, including, but not limited to, the ability to file an administrative complaint with the Equal Employment Opportunity Commission, any state or local anti-discrimination agency, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, the Department of Justice, the Office of the Attorney General, or any other federal, state, or local governmental agency or commission (collectively referred to as "Government Agencies"); provided, however, Collective Members each waive and relinquish any rights they may otherwise have to seek or obtain or accept any personal recovery of damages or other monetary benefits or remedies from any of the Releasees in any form based upon or arising out of any claims released hereunder.

Nothing in this Agreement restricts Collective Members from initiating communications directly with, responding to any inquiry from, or providing information or documents to, or providing testimony before any of the Government Agencies about actual or potential violations of laws or regulations. Collective Members are not required to obtain a Defendant's prior authorization before engaging in such communications, nor are Collective Members required to inform Defendant about such communications.

b. **Collective/Class/Representative Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Collective Members waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective, representative, or multi-party action or proceeding based on such a claim in which Defendant or any other any Releasees identified in this Agreement is a party. In the event any class, collective action or other action is brought against Defendant or any other Releasee that includes or may include any Collective Members, the Collective Members shall not file a claim or receive any relief or recovery for any claim that has accrued before this Agreement.

## MISCELLANEOUS

8. **Acknowledgments and Affirmations.** Collective Members represent and affirm that:

- Collective Members have not filed or caused to be filed, and are not presently a party to, any claim against Defendant except for the Civil Action (which they each agree to dismiss with prejudice). Nothing in this Agreement or these Affirmations is intended to impair Collective Members' rights under whistleblower laws or cause Collective Members to disclose his or her participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

- Upon receipt of the Settlement Payment, Collective Members have been paid and/or have received all compensation, wages, bonuses, commissions and/or benefits to which they may be entitled.

- Collective Members are not aware of any unreported conduct or omission by or on behalf of the Releasees during their respective employment terms that violate applicable law, rule, regulation or applicable financial/accounting standard.

- Collective Members represent, warrant, and acknowledge that there are bona fide legal arguments and disputes between the Defendant and the Collective Members, and that the consideration described in Paragraph 2 reflects a full compromise for any such claims,

- Collective Members are not a Medicare or Medicaid beneficiary as of the date of this Agreement and, therefore, no conditional payments have been made by Medicare or Medicaid.

- The parties affirm and acknowledge that counsel for Plaintiffs will conduct a search to ascertain if there are child support obligations pending against any Collective Member, as required by N.J. Stat. § 2A:17-56.23b. Collective Members, to the maximum extent permitted by law, hereby irrevocably and unconditionally release and discharge Releasees from any and all claims, known or unknown, arising from Collective Members' child support obligations, if any.

- Any Collective Member who is presently employed by the Defendant or who later becomes employed by the Defendant or any Releasee and is paid as a salary non-exempt employee acknowledges and agrees that he or she has a clear understanding that his or her salary is compensation for all hours worked and any overtime will be calculated and paid using the fluctuating workweek method, which his or her counsel has explained to him or her.

- Any Collective Member who is employed by the Defendant or later becomes employed by the Defendant or any other Releasee acknowledges and agrees that he or she has been fully informed of Defendant's policy that non-exempt employees must record all hours worked and must not work off the clock. He or she further agrees to fully comply with those policies. Each also agrees that he or she will promptly report any violations of these policies to his or her team relations specialist.

In addition, the Parties acknowledge that this Agreement does not limit any Collective Member's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Collective Members agree that if such an administrative wage and hour claim is made, Collective Members shall not be entitled to recover any individual monetary relief or other individual remedies. And except for purposes of approval of the settlement, neither this agreement, discussions about this agreement, or the contents of this agreement shall be admissible in any proceeding except in an action to enforce this Agreement.

9. **Governing Law and Interpretation**. This Agreement shall be governed and conformed in accordance with the laws of the State of Michigan without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, the Parties will be entitled to all remedies available at law. Except as to the payment provisions, should any provision of this Agreement be declared illegal or unenforceable and cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. The Court presiding over the Civil Action, as defined above, will retain exclusive jurisdiction to enforce this Agreement and any dispute shall be resolved by such Court without a jury.

10. **Non-Admission of Wrongdoing**. The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any

time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11. **No Publicity.** The Plaintiffs agree that neither the Collective Members or their respective counsel shall: (a) publicize the terms of this Agreement to any person, media outlet (including newspapers, magazines, radio, television, websites, blogs, or other platforms), or in any other manner; or (b) disclose the terms of this settlement to any current or former employees of any Releasee, except as required by law or as necessary for settlement administration, except as otherwise provided for in this Agreement.

Subject to the exceptions in this Paragraph and in the Paragraph titled "Governmental Agencies," the Plaintiffs and the Collective Members agree that they will not directly, indirectly, or in response to any inquiry from the press, public media, or other third parties, make, publish, or verbally communicate any disparaging or defamatory statements, in writing or otherwise, concerning Defendant, the Releasees, or any of their officers, directors, shareholders or employees.

Nothing herein shall prevent any Party from making or publishing any truthful statement (i) when required by law, subpoena, or court order, (ii) in the course of any legal, arbitral, or regulatory proceeding, or (iii) to any governmental authority, regulatory agency, or self-regulatory organization.

12. **Neutral Reference**. The Company agrees to follow its standard policy of providing a neutral reference confirming dates of employment and last position held; provided Collective Members follow the Company's employment reference process, which requires Collective Members to direct and refer all reference inquiries to 1-800-649-0533.

13. **Cooperation.** Collective Members agree that upon the Company's reasonable notice, they shall reasonably cooperate with the Company and its counsel (including, if necessary, by participating in preparation for and appearance at interviews, investigations, depositions, hearings, trials, or other proceedings) with regard to any past, present, or future legal or regulatory matters that relate to or arise out of appraisal matters they handled or advised on during their employment with the Company. The Company shall reimburse any Collective Member for any reasonable travel expenses if the Company requires the Collective Member(s) to participate in-person.

14. **Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

15. **Mutual Negotiation.** This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it. Instead, it shall be construed as if both Parties prepared it jointly.

16. **Third-Party Beneficiaries.** All Releasees are third-party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they may enforce the provisions of this Agreement applicable to any such Releasee as against Plaintiffs or any party acting on Plaintiffs' behalf.

17. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, or any other applicable non-expired provisions contained in any employment or stock purchase agreement, which shall remain in full force and effect according to their terms. Collective Members acknowledge that they have not relied on any representations, promises, or agreements of any kind made to Collective Members in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

18. **Counterparts.** This Agreement may be executed in counterparts, each of which so executed shall be deemed an original, and such counterparts will together constitute one Agreement. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding on the party who transmits the signature page by facsimile or email.

PLAINTIFFS EACH FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND REVIEW WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL FLSA CLAIMS PLAINTIFFS HAVE OR MIGHT HAVE AGAINST RELEASEES.

The Parties knowingly and voluntarily sign this Agreement and Release as of the date(s) set forth below:

*Plaintiffs*

Lenny Coppola

Dated: _____, 2025

_____
Lenny Coppola

Cheryl Accardi

Dated: _____, 2025

_____
Cheryl Accardi

*Defendant*

On Behalf of Defendant Rocket Close LLC, f/k/a Amrock, LLC

Dated: 10/22/2025, 2025

By: *Nicole Beattie*
Name: Nicole Beattie
Title: CEO